LOBRANO, Judge.
Defendant Gayle Bird Interiors, Ltd. (GBI) appeals an adverse judgment awarding Consolidated Freightways (CF) $1,689.67, plus $422.50 in attorney fees, under a petition on open account.
GBI is an interior design firm owned and operated by Gayle Bird (Bird). Bird, acting as GBI’s representative, contracted to design a room for The Court of Two Sisters, a restaurant located in New Orleans. As part of GBI’s design Bird selected chairs manufactured by Pompeii Casuals (Pompeii), a furniture company located in Miami, Florida. A sales representative for Pompeii informed Bird that it would cost $499.66 to ship 168 of the selected chairs from Miami to New Orleans via CF. Relying on this information, The Court of Two Sisters agreed to purchase the chairs and to reimburse GBI for the $499.66 freight charge.
On January 17,1990, CF prepared a bill of lading documenting the shipment of 130 chairs from Miami to New Orleans. Pompeii was listed as the shipper, The Court of Two Sisters as the consignee, and GBI as the party responsible for freight charges.
The chairs were delivered to The Court of Two Sisters on January 24, 1990, at which time the CF delivery driver accepted a check from GBI for $499.66.[1] The driver gave the person who accepted the merchandise a delivery receipt which listed the total freight charges as $499.66. Several weeks after delivery, CF sent GBI a bill stating that GBI owed an additional $1,689.67 on the shipment of the chairs. Bird contacted representatives of CF and Pompeii concerning the discrepancy between the original and final bill. Neither CF nor Pompeii was able or willing to resolve the discrepancy, and Bird refused to pay the additional balance demanded by CF. On July 8, 1991, CF filed a petition on open account against GBI, seeking recovery of the $1,689.67 balance demanded.
In his reasons for judgment the trial court concluded that GBI was responsible because it relied on “the quotes from Pompeii Casuals Furniture Company and not that of the plaintiff. The plaintiff can not be responsible for the information that Pompeii Casuals Furniture Company gave the defendant.” We affirm in part and reverse in part.
Among the documents introduced by CF was a tariff sheet which provided that whenever a shipment occupied the full visible capacity of a twenty-eight foot trailer, the minimum charge for the load would be “22,000 pounds at the class 50 scale.” CF also introduced a shipping bill showing that the chairs in question were delivered on a twenty-eight foot trailer.
Pat Jenkins, operations supervisor for CF, testified that the original shipping bill of $499.66 was computed by a CF clerk based on Pompeii’s representation that the chairs weighed 2600 pounds and were of shipping class 125. However, when CF personnel became aware that the shipment had filled up an entire trailer, the bill was recalculated in accordance with the tariff sheet introduced by CF. Jenkins stated that CF was required by law to recalculate the bill and to collect the full amount owed under the tariff. He also' testified that had Pompeii informed CF that the chairs would fill up an entire trailer, an accurate bill would have been calculated prior to delivery.
Gayle Bird testified that she had relied on the shipping costs provided by Pompeii in calculating for The Court of Two Sisters the total cost of this design project. She admit *447 ted that she did not contact CF prior to delivery to determine what the freight charges would be. Bird testified that several weeks after delivery, CF informed her that a mistake had been made in the original bill. Bird stated that she had never experienced this type of problem during the sixteen years she had been in business.
Under the Interstate Commerce Act (Act), motor carriers are required to publish and file with the Interstate Commerce Commission tariffs setting forth their transportation rates. 49 U.S.C. Section 10762(a). The Act specifically provides that a “carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff * * *.” 49 U.S.C. Section 10761. Deviation from the filed tariff may result in civil or criminal sanctions on the carrier or shipper. 49 U.S.C. Section 11902-11904.[2]
These provisions have resulted in the “filed rate doctrine,” which was recently reiterated by the United States Supreme Court in Maislin Industries, U.S. v. Primary Steel, Inc., 497 U.S. 116, 126, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990):
Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination. 497 U.S. at 126, 110 S.Ct. at 2766.
In Maislin, the Supreme Court struck down a policy adopted by the ICC which relieved a shipper of the obligation of paying a filed tariff when the carrier and shipper had privately negotiated a lower rate.
In the instant case, although the bill of lading designates Pompeii Casuals as the shipper, it also reflects that Bird is the party responsible for the shipping charges. The delivery receipt also contains the same information. In our opinion, Bird was charged with notice of the tariff and is thus responsible. “Ignorance or misquotation of rates is not an excuse for paying ... less ... than the rate filed.” Maislin, supra at 126, 110 S.Ct. at 2766.
However, we reverse that portion of the trial court judgment awarding attorney fees pursuant to the “open account” statute. La.R.S. 9:2781. Subsection C of that statute defines “open account” as one which includes “any account for which a part or all of the balance is past due ... whether or not at the time of contracting the parties expected future transactions.” (emphasis added).
The statute contemplates that the basis of a defendant’s liability is an agreement by her as to the price for the goods or services sought. In the instant case Gayle Bird’s liability is based on the “filed rate” doctrine which, in our opinion, is outside the realm of an open account. The Interstate Commerce Act imposes this liability on shippers whether they agree to it or not and irrespective of their ignorance of the rates. This is not the case of one who refuses to pay freight charges which were agreed to. In this case the defendant is made to pay freight charges over and above what she agreed to pay because the law requires her to pay it. We conclude that liability under these circumstances does not qualify for the imposition of attorney fees under R.S. 9:2781.
We therefore affirm the judgment in favor of Consolidated Freightways for $1,689.67 plus costs. We reverse the award of attorney fees.
*448 AFFIRMED IN PART; REVERSED IN PART.

. On Januaiy 18, 1990, CF picked up an additional 34 chairs from Pompeii and delivered them to The Court of Two Sisters at a cost of $232.96. This shipment is not at issue in this appeal.

. 49 U.S.C. 11902 provides that a shipper who knowingly receives a rebate or offset against the filed rate is liable to the government for a civil penalty in an amount equal to three times the rebate. 49 U.S.C. 11903(a) states that any person who "knowingly offers, grants, gives, solicits, accepts, or receives” service at less than the filed rate "shaff be fined at least $1,000.00 but not more than $20,000.00, imprisoned for not more than 2 years, or both.”